UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

KELLY M. BRENEISEN and DANIEL
BRENEISEN, individually, and on behalf
of all others similarly situated,

    Plaintiffs,

v.

COUNTRYSIDE CHEVROLET/BUICK/
GMC, INC.,

    Defendant.

Case No. 2:21-cv-00412

## CLASS ACTION COMPLAINT

**NOW COME** Plaintiffs, KELLY M. BRENEISEN and DANIEL BRENEISEN, individually and on behalf of all other similarly situated, by and through their undersigned counsel, complaining of Defendant COUNTRYSIDE CHEVROLET / BUICK / GMC, INC., as follows:

### NATURE OF THE ACTION

1. Plaintiffs bring this action seeking redress for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

2. "Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained by consumer reporting agencies." *Cole v. U.S. Capital, Inc*, 389 F.3d 719, 725 (7th Cir. 2004) *citing* 15 U.S.C. § 1681(a)(4).

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

4. Venue in the Eastern District of Wisconsin is proper pursuant to 28 U.S.C. §§1391(b)(1) and (2) because Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this District.

1

## PARTIES

5. KELLY M. BRENEISEN ("Kelly") and DANIEL BRENEISEN ("Daniel") (collectively, "Plaintiffs") are natural persons, who at all times relevant resided in Johnsburg, Illinois.

6. COUNTRYSIDE CHEVROLET/BUICK/GMC, INC. ("Defendant") is a Wisconsin car dealership that maintains its principal of business in Beaver Dam, Wisconsin.

## FACTUAL ALLEGATIONS

7. In 2018, Plaintiffs were on the market for a vehicle.

8. During their search for a vehicle, Plaintiffs found a 2018 Malibu on Defendant's website that they were interested in.

9. In June 2018, Plaintiffs visited Defendant's dealership to inspect and test-drive the 2018 Malibu.

10. Upon arrival at Defendant's dealership, Plaintiffs were greeted by a salesman employed by Defendant ("Defendant's salesman").

11. Plaintiffs advised Defendant's salesman that they are interested in purchasing the 2018 Malibu.

12. Plaintiffs further advised Defendant's salesman that they will be paying cash for the vehicle and that they are not interested in any financing.

13. Plaintiffs explicitly instructed Defendant's salesman to not conduct a credit check as they will be purchasing the vehicle with cash.

14. Plaintiffs test drove the 2018 Malibu and wanted to proceed with the cash purchase of the vehicle.

15. Plaintiffs and Defendant's salesman reached an agreement on the purchase price.

16. Shortly thereafter, Defendant's salesman asked Plaintiffs for their social security numbers to "complete" the purchase.

17. Plaintiffs reiterated that they are not interested in financing and will be purchasing the vehicle in cash.

18. Defendant's salesman assured Plaintiffs that he would not be running a credit check in light of the fact that it will be cash purchase and that the social security numbers are necessary to "complete" the cash purchase.

19. Based on Defendant's salesman's representation that a credit check will not be conducted, Plaintiffs reluctantly provided their social security numbers to Defendant's salesman.

20. Defendant's salesman stepped away momentarily and returned with a gentleman that held himself out as the owner of the dealership ("owner").

21. Plaintiffs advised the owner that they were ready to complete the purchase and will return to the dealership with a cashier's check.

22. The owner advised Plaintiffs that there will be a fee for a cashier's check.

23. Plaintiffs declined to purchase the vehicle if they will be assessed a fee for a cashier's check.

24. The owner advised Plaintiffs that in order to avoid a fee, they will have to come back with cash to complete the transaction.

25. After a lengthy discussion on the logistics of completing the purchase, Plaintiffs decided to hold off on the vehicle purchase and left the dealership.

26. Plaintiffs never returned to Defendant's dealership or otherwise purchased a vehicle from Defendant.

27. On July 18, 2018, Plaintiffs each received a letter from Defendant indicating that Defendant accessed Plaintiffs' Experian and Trans Union credit reports on June 30, 2018 because Plaintiffs "inquired about doing business with Countryside Auto Group."

28. Shortly thereafter, Defendant's salesman called Kelly to follow up on her interest in the 2018 Malibu.

29. During this call, Kelly asked Defendant's salesman why Defendant pulled Kelly and Daniel's Experian and Trans Union credit reports.

30. In response, Defendant's salesman stated that it was "standard procedure" to pull the credit reports of potential buyers.

31. Infuriated with the unauthorized access of her credit reports, Kelly terminated the call.

32. Years have passed and Defendant's "hard inquiry" on Plaintiffs' credit reports remains.

33. At no point in time did Plaintiffs authorize Defendant to access their Experian and Trans Union credit reports.

34. Upon information and belief, Defendant misrepresented to Experian and Trans Union that Plaintiffs were applying for financing from Defendant.

35. Defendant obtained sensitive personal information concerning Plaintiffs without Plaintiffs' authorization under false pretenses.

## DAMAGES

36. Defendant's unauthorized conduct resulted in significant harm to Plaintiffs.

37. Specifically, Defendant's credit inquiries are considered a "hard inquiry," which adversely impacts a consumer's credit score.

38. Lenders have questioned Plaintiffs about Defendant's "hard inquiry" and have assumed that Plaintiffs were denied financing by Defendant, thus rendering Plaintiffs as high-risk consumers.

39. Due to Defendant's unauthorized "hard inquiry," Plaintiffs' credit scores decreased.

40. Defendant's conduct caused Plaintiffs anxiety, distress, mental anguish, and a reduced credit score.

41. Moreover, Defendant's unauthorized access of Plaintiffs' credit information was highly intrusive and invaded Plaintiffs' privacies.

42. Concerned with the long-term impact of the "hard inquiries," Plaintiffs retained counsel to enforce their privacy rights and compel Defendant to take action to remove the "hard inquiries" from their respective credit reports.

## CLASS ALLEGATIONS

43. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

44. Upon information and belief, Defendant systematically accesses consumers' credit reports by falsely representing to the credit reporting agencies that consumers are applying for financing from Defendant.

45. Upon information and belief, Defendant utilizes the credit scores it obtains under false pretenses to negotiate a more favorable purchase price.

46. Defendant's systematic practice of accessing consumers' credit reports without a permissible purpose prescribed by the FCRA constitutes a willful and malicious violation(s) of 15 U.S.C. § 1681b(f).

47. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated (the "Putative Class") defined as follows:

> All persons within the United States (1) who have had their consumer credit report(s) obtained by Defendant; (2) within the five (5) years preceding the date of the original complaint through the date of class certification; (3) from Equifax, Experian, and/or Trans Union; and (4) in which Defendant did not have a permissible purpose enumerated in the Fair Credit Reporting Act to access such person's consumer credit report(s), including any persons who purchased or intended to purchase a car from Defendant without financing.

48. The following individuals are excluded from the Putative Class: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers, and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

**A.  Numerosity**

49. Upon information and belief, the members of the Putative Class are so numerous that joinder of them is impracticable.

50. The exact number of the members of the Putative Class is unknown to Plaintiffs at this time and can only be determined through targeted discovery.

51. The members of the Putative Class are ascertainable because the class is defined by reference to objective criteria.

52. The members of the Putative Class are identifiable in that their names, addresses, and telephone numbers can be identified in business records maintained by Defendant.

**B.     Commonality and Predominance**

53. There are many questions of law and fact common to the claims of Plaintiffs and the Putative Class.

54. Those questions predominate over any questions that may affect individual members of the Putative Class.

**C.     Typicality**

55. Plaintiffs' claims are typical of members of the Putative Class because Plaintiffs and members of the Putative Class are entitled to damages as result of Defendant's conduct.

**D.     Superiority and Manageability**

56. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

57. The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

58. By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

59. Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

**E.     Adequate Representation**

60. Plaintiffs will adequately and fairly represent and protect the interests of the Putative Class.

61. Plaintiffs have no interests antagonistic to those of the Putative Class, and Defendant has no defenses unique to Plaintiffs.

62. Plaintiffs have retained competent and experienced counsel in consumer class action litigation.

## CLAIMS FOR RELIEF

### Count I:
### Defendant's violations of 15 U.S.C. § 1681b(f)
### (On behalf of Plaintiffs and the Members of the Putative Class)

63. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

64. Plaintiffs are each a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

65. Defendant is a "person" as defined by 15 U.S.C. §1681a(b).

66. Plaintiffs' Experian and Trans Union credit reports that Defendant accessed without authorization are "consumer reports" as defined by §1681a(d)(1).

67. Defendant violated 15 U.S.C. §1681b(f) by obtaining Plaintiffs' Experian and Trans Union credit reports without Plaintiffs' authorization and without a permissible purpose enumerated in the FCRA.

68. As stated above, Plaintiffs explicitly advised Defendant that they were not interested in financing and thus Defendant had no legitimate business need for Plaintiffs' credit reports.

69. Defendant willfully and maliciously violated §1681b(f) when it accessed Plaintiffs' credit reports without a permissible purpose under the FCRA.

70. In the alternative, Defendant negligently violated §1681b(f) by accessing Plaintiffs' credit reports without a permissible purpose under the FCRA.

71. As described above, Plaintiffs were harmed by Defendants' conduct.

72. Upon information and belief, Defendant knowingly and systematically obtains consumer credit reports without a permissible purpose prescribed by the FCRA.

73. Upon information and belief, Defendant does not maintain policies and procedures to protect consumers' privacy interests and prevent the unlawful access of consumer credit reports.

74. Due to Defendant's unlawful conduct, Plaintiffs are entitled to actual damages, statutory damages, and punitive damages.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendant, as follows:

A. Granting certification of the proposed class, including the designation of Plaintiffs as the named representatives, and the appointment of the undersigned as Class Counsel.

B. Declaring that the practices complained of herein are unlawful and violate the Fair Credit Reporting Act.

C. Enjoining Defendant from accessing consumer credit reports without a permissible purpose.

D. Awarding Plaintiffs and the class members actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations.

E. Awarding Plaintiffs and the class members statutory damages of $1,000.00 for each violation of the FCRA pursuant to 15 U.S.C. §1681n.

F. Awarding Plaintiffs and the class members punitive damages in an amount to be determined at trial for the underlying FCRA violations pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o.

G. Awarding Plaintiffs their costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury.

Date: March 31, 2021                                       Respectfully Submitted,

                                                                        **KELLY M. BRENEISEN**
                                                                        **DANIEL BRENEISEN**

                                                                        By**:** <u>/s/ *Mohammed O. Badwan*</u>

                                                                        Mohammed O. Badwan, Esq.
                                                                        Victor T. Metroff, Esq.
                                                                        *Counsel for Plaintiffs*
                                                                        Sulaiman Law Group, Ltd
                                                                        2500 S. Highland Ave, Suite 200
                                                                        Lombard, IL 60148
                                                                        Telephone: (630) 575-8180
                                                                        mbadwan@sulaimanlaw.com
                                                                        vmetroff@sulaimanlaw.com