UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KELLY M. BRENEISEN
and DANIEL BRENEISEN,
*individually and on behalf of
all others similarly situated*,

    Plaintiffs,

v.

                                  Case No. 21-CV-412

COUNTRYSIDE CHEVROLET/BUICK/GMC, INC.,

    Defendant.

## ORDER

Kelly M. Breneisen and Daniel Breneisen filed this individual and class action alleging that Countryside Chevrolet/Buick/GMC, Inc., violated the Fair Credit Reporting Act by obtaining credit reports without a permissible purpose. Countryside has moved to dismiss the case. For the reasons stated below, I will deny Countryside's motion.

### I. BACKGROUND

The Breneisens were in the market for a car in 2018. ECF No. 1, ¶ 7. That June, they visited Countryside's dealership to inspect and test drive a vehicle. The Breneisens met with a salesperson and informed the individual that they were interested in purchasing a 2018 Chevrolet Malibu. *Id.*, ¶¶ 10–11. They explained they were not interested in financing and would be paying for the vehicle in cash. *Id.*, ¶ 13. The Breneisens explicitly instructed the salesperson not to conduct a credit check because they would be paying in cash. *Id.*, ¶ 13.

After a test drive, the Breneisens and the salesperson agreed on a purchase price. *Id.*, ¶ 15. The salesperson then asked the Breneisens for their social security numbers to "complete" the purchase. *Id.*, ¶ 16. The Breneisens reiterated that they were not interested in financing and would be paying for the vehicle in cash. *Id.*, ¶ 17. The salesperson assured the Breneisens that he would not run a credit check, repeating that the social security numbers were merely needed to "complete" the purchase. *Id.*, ¶ 18. The Breneisens reluctantly gave the salesperson the information. *Id.*, ¶ 19.

The salesperson stepped away momentarily and returned with the owner of Countryside. *Id.*, ¶ 20. The Breneisens informed the owner that they were ready to complete the purchase and would return with a cashier's check. *Id.*, ¶ 21. The owner noted that the dealership charged a fee for cashier's checks. *Id.*, ¶ 22. The Breneisens refused to purchase the vehicle if they were assessed a fee for paying with a cashier's check. *Id.*, ¶ 23. The owner stated that the Breneisens could only avoid the fee if they paid in cash. *Id.*, ¶ 24. After a lengthy discussion, the Breneisens decided not to purchase the vehicle and left the dealership. *Id.*, ¶ 25. They never returned and did not purchase a vehicle from Countryside. *Id.*, ¶ 26.

On July 18, 2018, Kelly and Daniel both received a letter from Countryside stating that the dealership had accessed their Experian and TransUnion credit reports on June 30, 2018 because they "inquired about doing business with Countryside Auto Group." *Id.*, ¶ 27. Shortly thereafter, Countryside's salesperson called Kelly to follow up on the Chevrolet Malibu. *Id.*, ¶ 28. Kelly questioned the salesperson about the credit reports. *Id.*, ¶ 29. The salesperson responded that pulling credit reports on potential customers was "standard procedure" at Countryside. *Id.*, ¶ 29–30.

The complaint alleges that Countryside misrepresented to Experian and TransUnion that the Breneisens were applying for financing. *Id.*, ¶ 34. Countryside's credit inquiries are considered "hard inquiries" and have caused the Breneisens's credit scores to decrease. *Id.*, ¶ 38–39. Some lenders have considered the Breneisens high-risk consumers because of the hard inquiries. *Id.*, ¶ 40. The Breneisens have suffered from anxiety, distress, and mental anguish because of Countryside's conduct. *Id.*, ¶ 40.

The Breneisens originally filed an action against Countryside in the Northern District of Illinois on April 24, 2020. The district court dismissed the action without prejudice for lack of personal jurisdiction and permitted the Breneisens to file an amended complaint by March 29, 2021. Instead of filing an amended complaint in the Northern District of Illinois, the Breneisens commenced the instant action in this district on March 31, 2021.

## II. DISCUSSION

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). I "accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A. Statute of Limitations

Countryside seeks to dismiss the Breneisens's action for lack of subject matter jurisdiction under Rule 12(b)(1). Subject matter jurisdiction is lacking, according to Countryside, because the action is time-barred. However, "[t]he expiration of the statute of limitations is an affirmative defense that does not affect [a court's] subject matter jurisdiction." *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1001 (7th Cir. 2008). This court conclusively has subject matter jurisdiction under 28 U.S.C. § 1331 because the action arises under the Fair Credit Reporting Act. That said, "a district court may dismiss under Rule 12(b)(6) something that is indisputably time-barred." *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005). I will therefore construe Countryside's motion as brought under Rule 12(b)(6).

A plaintiff must commence a Fair Credit Reporting Act action no later than "(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs," whichever is earlier. 15 U.S.C. § 1681p. The Breneisens discovered the alleged FCRA violation when they received the letter from Countryside on July 18, 2018. Thus, Countryside contends, and the Breneisens do not dispute, the two-year statute of limitations applies and started running on July 18, 2018.

Countryside sees this motion as a matter of simple arithmetic; the action is time-barred because the Breneisens filed this action on March 31, 2021, more than eight months after the expiration of the statute of limitations. The Breneisens respond that the statute of limitations was tolled upon the filing of the Northern District of Illinois action under the reasoning of *Burnett v. New York Cent. R. Co.*, 380 U.S. 424 (1965).

4

In *Burnett*, an employee filed a timely Federal Employers' Liability Action (FELA) against his employer in state court. *Burnett v. New York Cent. R. Co.*, 380 U.S. 424, 424 (1965). The state court dismissed the action for improper venue. *Id.* at 424. Eight days later, the employee filed an identical suit in federal district court. *Id.* The state court action was timely, but the federal court action was filed beyond the statue of limitations. *Id.* The district court dismissed the action as time-barred, and the court of appeals affirmed. *Id.* The Supreme Court granted certiorari to determine whether the employee's state court action tolled the FELA statute of limitations. *Id.* at 426. It answered in the affirmative: "[W]hen a plaintiff begins a timely FELA action in a state court having jurisdiction, and serves the defendant with process and plaintiff's case is dismissed for improper venue, the FELA limitation is tolled during the pendency of the state suit." *Id.* at 434–35.

The core holding of *Burnett* is not directly on point because this is a FCRA action that was previously dismissed for lack of personal jurisdiction. However, the Court's reasoning is instructive and has been applied by other courts to determine tolling issues in varied contexts. *See, e.g.*, *Fox v. Eaton Corp.*, 615 F.2d 716, 719 (6th Cir. 1980) (Title VII statute of limitations tolled upon timely filing of state court action that was ultimately dismissed for lack of subject matter jurisdiction); *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1174 (9th Cir. 1986) (same); *Platoro Ltd., Inc. v. Unidentified Remains of a Vessel*, 614 F.2d 1051, 1054–55 (5th Cir. 1980) (salvage suits statute of limitations tolled upon timely filing of federal court action that was ultimately dismissed for lack of in rem admiralty jurisdiction); *Abeyta v. BNSF Ry. Co.*, 2018 WL 327283, at *4 (E.D. Wash. Jan. 8, 2018) (FELA statute of limitation tolled upon timely filing of state court action that was ultimately dismissed for lack of personal jurisdiction); *Neal v. Buffaloe & Assocs.*, 2012 WL 1883419,

5

at *2–*3 (M.D. Tenn. May 22, 2012) (Fair Debt Collection Practices Act statute of limitation tolled upon timely filing of federal court action that was ultimately dismissed for lack of personal jurisdiction).

Before turning to the *Burnett* analysis, I will say a word about Countryside's citation to *TRW Inc. v. Andrews*, 534 U.S. 19 (2001). That case concerned the proper FCRA accrual date—that is, when the FCRA statute of limitations starts running. Here, the Breneisens do not dispute the accrual date; they contend that the statute of limitations was later equitably tolled as they pursued their claim in the Northern District of Illinois. As the Seventh Circuit has explained, "[w]hen a limitations period starts and whether it is later equitably tolled are two different questions." *Ryan v. United States*, 657 F.3d 604, 607 (7th Cir. 2011). Moreover, even if this dispute concerned the date of accrual, Congress amended FCRA's statute of limitations after the Court's decision in *TRW*. Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108–159, § 156, 117 Stat. 1952 (2003). Unlike the version considered in *TRW*, the current FCRA statute of limitations contains a general discovery rule. 15 U.S.C. § 1681p(1). Thus, Countryside's reliance on *TRW* is unavailing.

Returning to *Burnett*, the key question is "whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Burnett*, 380 U.S. at 427. Statues of limitations assure fairness to defendants by preventing "the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Id.* at 428 (quoting *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944)). This purpose "is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's

rights." *Id.* Even if the interests of justice require vindication of the plaintiff's rights, "equitable tolling is to be restricted and reserved only for situations in which the claimant has made a good faith error (e.g., brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time." *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1314 (7th Cir. 1984). Thus, a plaintiff's bad faith or lack of diligence cannot serve as grounds for equitable tolling, even when important rights are at stake. *See Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984).

Here, the interests in vindicating the Breneisens's FCRA rights outweigh the interests embodied in the statute of limitations. Countryside does not claim that they are unfairly surprised or otherwise prejudiced by the instant action. Nor could it; the Breneisens timely filed an identical FCRA action in the Northern District of Illinois. True, the Breneisens erred in choosing that district as the forum for their suit, but there is no indication of bad faith or a lack of diligence on their part. Instead, they were armed with at least one district court case that they reasonably believed supported their theory of personal jurisdiction. The district court rejected their reliance on *Rogers v. Smith Volkswagen, Ltd.*, 2020 WL 1676400 (E.D. Pa. Apr. 6, 2020), but it did not find the argument frivolous. *See Fox*, 615 F.2d at 719 ("[T]he filing of an action in a court that clearly lacks jurisdiction will not toll the statute of limitations."). Furthermore, the Breneisens asked the district court to transfer the action to this district. The district court declined to do so because the request was made in the reply brief, not, as Countryside suggests, because the Breneisens's choice of forum was blatantly improper. But here again, the Breneisens's actions do not indicate a lack of diligence, for a district court can transfer a case under 28 U.S.C. § 1631 "even if not asked to do so by either party." *Phillips*

7

*v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999). Finally, the Breneisens did not sleep on their rights. They filed the instant action sixteen days after the Northern District of Illinois' dismissal order.

Under these circumstances, I find that the statue of limitations for the instant action was tolled while the Breneisens pursued their claim in the Northern District of Illinois. Therefore, based on the allegations of the complaint, the Breneisens's claim is not indisputably time-barred.

### B. Permissible Purpose

Countryside also asserts that the Breneisens failed to state a claim under 15 U.S.C. § 1681b(f). That provision makes it unlawful to obtain a consumer report for a purpose that is not authorized by FCRA. 15 U.S.C. § 1681b(f). As relevant here, a person may obtain a consumer report if they have "a legitimate business need for the information . . . in connection with a business transaction that is initiated by the consumer." 15 U.S.C. § 1681b(a)(3)(F)(1).

Countryside contends that the Breneisens have pled themselves out of court. The complaint, according to Countryside, establishes that the dealership had a legitimate business need to obtain the Breneisens's credit reports—that is, the Breneisens offered to pay for a vehicle with a cashier's check. Countryside cites a 1998 FTC Advisory Opinion as authority for this conclusion:

> The dealer must have a specific need for the information directly related to the completion of the transaction. For example, a dealer may obtain a report, if one is necessary, in order to arrange financing requested by the consumer. The dealer may also obtain a report to check a consumer's creditworthiness when the consumer presents a personal check to pay for the vehicle. By contrast, a permissible purpose would not arise if a consumer intends to pay by cash.

8

F.T.C., Opinion Letter to Coffey (Feb. 11, 1998), https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-coffey-02-11-98. The Breneisens respond that the complaint contains sufficient factual allegations from which I can infer that Countryside did not have a permissible purpose to obtain their credit reports.

The complaint does not explicitly allege that Countryside obtained the Breneisens's credit report because the Breneisens offered to pay for the vehicle with a cashier's check. Instead, it alleges that the Breneisens notified Countryside multiple times that they intended to pay with cash and did not need financing. After agreeing on a purchase price, the Breneisens told Countryside that they were ready to purchase the vehicle and would return to the dealership with a cashier's check. After learning about the Breneisens's intention to pay with a cashier's check, Countryside informed the two that they would incur a fee for doing so. The Breneisens refused to purchase the car if they would be assessed such a fee. Countryside stated that they could only avoid the fee by paying in cash. After a lengthy discussion, the Breneisens decided not to purchase the vehicle and left the dealership. They never returned and did not purchase a vehicle from Countryside. The following month, the Breneisens received a letter from Countryside explaining that the dealership had obtained their credit reports because they "inquired about doing business with Countryside Auto Group." When Kelly Breneisen subsequently spoke with Countryside, a salesperson told her it was "standard procedure" to pull credit reports of potential buyers.

Countryside's preferred inference from these allegations is that it obtained the Breneisens's credit reports to check their creditworthiness when presented with a cashier's check. At this stage of litigation, however, it is the Breneisens who are entitled

9

to favorable inferences. It is reasonable to infer that Countryside obtained the credit reports after the Breneisens refused to pay with a cashier's check and decided not to purchase the vehicle. Thus, when it obtained the credit reports, Countryside knew the Breneisens did not intend to purchase the vehicle, let alone pay for it with financing or a cashier's check. Countryside then had no reason to check the Breneisens's creditworthiness. The dealership's subsequent communications with the Breneisens further support this inference; neither the letter nor the phone conversation mention the cashier's check. Therefore, as alleged, it is plausible that Countryside did not have a legitimate business need for the credit reports. That is sufficient to state a claim under 15 U.S.C. § 1681b(f).

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's motion to dismiss is **DENIED**.

Dated at Milwaukee, Wisconsin, on this 1st day of December, 2021.

                                        s/Lynn Adelman_____
                                        LYNN ADELMAN
                                        United States District Judge